620 P.2d 1341 (1980)
In the Matter of J.W.N., A Child Under Eighteen (18) Years of Age.
No. J-80-195.
Court of Criminal Appeals of Oklahoma.
December 15, 1980.
Gary Peterson, Deputy Appellate Public Defender, Norman, for appellant.
Bill Roberson, Dist. Atty., John Gerard Canavan, Jr., Asst. Dist. Atty., Shawnee, for appellee.

*1342 OPINION
BUSSEY, Judge:
J.W.N., age 14, was charged by petition, filed in the juvenile division of the Pottowatomie County District Court, with Burglary in the First Decree, Title 21 O.S.Supp. 1980, § 1431, Assault and Battery With Intent to Kill, Title 21 O.S.Supp. 1980, § 652, and Larceny of an Automobile, Title 21 O.S. 1971, § 1720. At a hearing held on January 16, *1343 1980, before the Honorable Glen Dale Carter, Associate District Judge, the District Court found prosecutive merit to the claims of the petition. At a hearing held on January 30, 1980, the District Court found J.W.N. nonamenable to reasonable rehabilitation and certified him to stand trial as an adult. From this order, J.W.N. has perfected this appeal.
The evidence presented at the prosecutive merit hearing centered around an incident which allegedly occurred in Tecumseh, Oklahoma, on January 2, 1980. Robert H. Parker, age 85, testified that he returned to his home from a trip to town around 7:00 p. m. on the day in question. After Mr. Parker had entered his house and locked the screen door, a boy, whom Parker identified as the appellant, approached the front door and asked Mr. Parker to drive him to Midwest City. Mr. Parker refused and closed the door. The appellant then tore the screen door off its hinges, kicked open the front door, and hit Mr. Parker in the head. After Mr. Parker regained his consciousness, he discovered that his telephone had been ripped off the wall and that his bluegreen, 1968 Ford pickup, which he testified had a tag number 106617, was missing along with the keys to same. Mr. Parker subsequently walked to a neighbor's house for help.
Around 9:55 p.m. on the same day, the appellant was taken into custody by Midwest City police while driving a green, 1968 Ford pickup, tag number T610607. A search of the vehicle disclosed a set of brass knuckles on which traces of human blood were found.
A physician testified that Mr. Parker had suffered multiple lacerations and contusions about the head, and a concussion of the brain. It was the physician's opinion that the injuries had been caused by multiple blows, and that the injuries, if left untreated, might have caused death.
Other testimony established that the appellant had been a resident at the Central Oklahoma Juvenile Treatment Center in Tecumseh on January 2, 1980, and at approximately 5:00 p.m. on that date, the appellant ran away from the facility without permission.
On the basis of this testimony, the District Court found that the three alleged offenses had in fact been committed, and that there was probable cause to believe that they had been committed by the appellant. The District Court further ordered that a certification study be prepared and that an amenability hearing was to be held on January 30, 1980.
The evidence at the amenability hearing basically centered around the certification study prepared by the State's witnesses, Pamela Husky, counselor for Court Related Services of Logan County, and Joan Elizabeth Phillips, a psychologist with the Redrock Comprehensive Medical Health Center in Shawnee. The testimony of both established that the appellant had had numerous contacts with law enforcement agencies since the age of 10; he was of normal or slightly below normal intellectual and emotional levels; he was conscious of societal norms and was probably able to distinguish right from wrong when he committed the alleged acts; he had the benefit of both open and closed rehabilitative facilities; he was AWOL from a closed campus rehabilitative facility when he committed the alleged criminal offenses; his home life was extremely unstructured; he was aggressive and violent; and he was in need of structured, long-term rehabilitation. Both of the State's witnesses and the appellant's expert witness, Marilyn Thoms, assistant supervisor with the Court Related Community Services of Logan County, agreed that the appellant was amenable to rehabilitation; however, none would guarantee that the appellant could be placed in the recommended rehabilitation program.
On the basis of this testimony, the certification report, the testimony of appellant's mother, the arguments of counsel at appellant's certification hearing, and the testimony at appellant's prosecutive merit hearing, Judge Carter issued an order on January 30, 1980, certifying the appellant to stand trial as an adult.
*1344 In his first assignment of error, the appellant contends that the State has not met its burden of justifying the trial of a 14-year-old as an adult. Implicit in the appellant's first proposition is a misconception concerning the standard of review of the trial court's order finding that appellant was not amenable to reasonable rehabilitation. Referring to the certification hearing, Title 10 O.S.Supp. 1979, § 1112(b), reads in part:
If the court finds that prosecutive merit exists, it shall continue the hearing for a sufficient period of time to conduct an investigation and further hearing to determine the prospects for reasonable rehabilitation of the child if he should be found to have committed the alleged act or omission.
In general, the trial court's second finding, the nonamenability to reasonable rehabilitation, must be supported by "substantial evidence." In J.T.P. v. State, Okl.Cr., 544 P.2d 1270 (1975), this Court stated:
The decision that a child is unfit for rehabilitation within the juvenile system is one within the discretion of the juvenile judge. That discretion, however, must be exercised within the bounds of due process which requires ... substantial evidence against the child's claim to the benefits of juvenile treatment.
The practical effect of the language of J.T.P. v. State, supra, is to place upon the State the burden of establishing nonamenability to reasonable rehabilitation by substantial evidence. See Matter of R.M., Okl. Cr., 561 P.2d 572 (1977). In defining the term "substantial evidence," this Court, in Calhoon v. State, Okl.Cr., 548 P.2d 1037 (1976), adopted language from Corbin v. United States, 253 F.2d 646, at 649 (10th Cir.1958), and stated in part:
`Substantial evidence is more than a scintilla. It must do more than create a suspicion of the existence of the fact to be established... '
Nevertheless, the appellant contends that the State did not meet what he says is a heavy burden in certifying a 14-year-old as an adult. In support he cites the testimony of the State's witnesses favoring juvenile treatment. However, this Court in Calhoon v. State, supra, stated:
The juvenile judge, in reaching the ultimate finding in the case, was not required to give exclusive, controlling effect to the testimony of experts ... but was required to weigh same along with all other evidence in the case. Stidham v. State, Okl.Cr., 507 P.2d 1312 (1973).
See also Matter of Miller, Okl.Cr., 562 P.2d 149 (1977). Furthermore, the age of the juvenile is only one factor among the totality of facts and attendant circumstances from which the trial court can reasonably infer a conclusion regarding amenability. See Matter of R.M., supra. As a consequence, there is no arithmetic formula which must be applied, and therefore, the trial court must be given some room for discretion. See Matter of Miller, supra; and J.T.P. v. State, supra.
An examination of the record in the present case reveals that the State produced substantial evidence from which the trial judge made a finding that the appellant was not amenable to reasonable rehabilitation by utilizing the statutory guidelines of 10 O.S.Supp. 1979, § 1112(b).[1] For instance, *1345 the record of the prosecutive merit hearing fully supports the notion that the alleged offenses were serious and were committed in an aggressive, violent, premeditated, and willful manner. The alleged offense of Assault and Battery with Intent to Kill, a crime against a person which resulted in personal injury, was committed subsequent to or concomitant with crimes against property, Larceny of an Automobile and Burglary in the First Degree. The record of the amenability hearing established that the appellant is of average maturity for his chronological age, and knew right from wrong when he allegedly committed the criminal offenses. Furthermore, the appellant had had the benefit of community and institutional services of both a closed and open campus nature, and had continued contacts with law enforcement agencies. The certification study established that the appellant suffered from emotional problems and required a structural, long-term, treatment-oriented program. However, it did not show with certainty that rehabilitative facilities and services which would have adequately protected the public were available to the juvenile process. Moreover, the alleged offenses occurred while the appellant was in an escape status from an institution for delinquent children. Clearly, the State produced "substantial evidence" supporting the trial court's finding that the appellant was not amenable to reasonable rehabilitation.
In his only other assignment the appellant contends that the evidence produced at appellant's preliminary hearing did not establish prosecutive merit to the Larceny of an Automobile charge. Referring to the preliminary hearing, Title 10 O.S.Supp. 1979, § 1112(b), reads in part:
Except as otherwise provided by law, if a child is charged with delinquency as a result of an offense which would have been a felony if it had been committed by an adult, the court on its own motion or at the request of the district attorney shall conduct a preliminary hearing to determine whether or not there is prosecutive merit to the complaint...
In J.T.P. v. State, Okl.Cr., 544 P.2d 1270 (1975), this Court stated:
We interpret section (b) [of 10 O.S. § 1112] to require two ultimate findings as a prerequisite to a valid certification order. The first of these is a finding of prosecutive merit to the complaint, which statutory phrase we construe to require a finding that a crime has been committed and there is probable cause to believe that the accused child committed it.
Whether or not the appellant is correct in his assertion that the testimony presented by the State at appellant's preliminary hearing would not have supported a conviction is irrelevant.[2] The testimony plainly supported the court's findings that the crime of Larceny of an Automobile had been committed and that there was probable cause to believe the appellant had committed it. Mr. Parker testified that the appellant came to his door and said, "I want you to drive me to Midwest City." When Mr. Parker refused, the appellant broke through two doors and viciously attacked Mr. Parker rendering him unconscious. After Mr. Parker had regained his consciousness, he noticed that his 1968, blue-green Ford pickup and its keys were missing. The appellant was subsequently apprehended in Midwest City driving a green, 1968 Ford pickup. As can be seen, there was ample evidence presented at appellant's preliminary hearing to support the trial court's finding of prosecutive merit to the Larceny of an Automobile charge.
*1346 The order of the District Court, certifying the appellant to stand trial as an adult, is AFFIRMED.
CORNISH, P.J., and BRETT, J., concur.
NOTES
[1] Title 10 O.S.Supp. 1979, § 1112(b), lists six factors which shall be given consideration by the trial court in its determination of amenability:

1. The seriousness of the alleged offense to the community, and whether the alleged offense was committed in an aggressive, violent, premeditated or willful manner;
2. Whether the offense was against persons or property, greater weight being given to offenses against persons especially if personal injury resulted;
3. The sophistication and maturity of the juvenile and his capability of distinguishing right from wrong as determined by consideration of his psychological evaluation, home, environmental situation, emotional attitude and pattern of living;
4. The record and previous history of the juvenile, including previous contacts with community agencies, law enforcement agencies, schools, juvenile courts and other jurisdictions, prior periods of probation or prior commitments to juvenile institutions;
5. The prospects for adequate protection of the public and the likelihood of reasonable rehabilitation of the juvenile if he is found to have committed the alleged offense, by use of procedures and facilities currently available to the juvenile court; and
6. Whether the offense occurred while the juvenile was escaping or in an escape status from an institution for delinquent children.
[2] The cases cited by appellant, United States v. Turner, 421 F.2d 252 (10th Cir.1970), and Tyler v. United States, 323 F.2d 711 (10th Cir.1963), are both based upon the sufficiency of evidence of proving a defendant guilty beyond a reasonable doubt, and are inapplicable to the present case.